# CHARLESTON.

R. J. SIMMS v. WM. H. SAWYERS, MAYOR, ETC. *et als.*

Submitted December 2, 1919.    Decided December 5, 1919.

1. TAXATION—*Injunction Against Collection of Tax Levied Under Unconstitutional Act.*

   Equity has jurisdiction at the suit of a taxpayer to enjoin the collection of a tax levied under the provisions of an unconstitutional act of the legislature. (p. 249).

2. CONSTITUTIONAL LAW—*Constitutional Provisions to be Construed as Mandatory.*

   The provisions of the Constitution, the organic and fundamental law of the land, stand upon a higher plane than statutes; and they will as a rule be held mandatory in prescribing the exact and exclusive methods of performing the acts permitted or required. (p. 249).

3. STATUTES—*Constitutional Provisions as to Subject and Title Mandatory.*

That provision of § 30 of Art. 6 of the Constitution stipulating that no act shall embrace more than one object, which shall be expressed in the title, mandatory. (p. 260).

4. CASE OVERRULED.

Point one of the syllabus of the case of *Shields and Preston v. Bennett,* 8 W. Va. 74, overruled. (p. 249).

5. STATUTES—*Invalidity of Act Embracing Two Separate and Distinct Subjects.*

An act of the legislature embracing two separate and distinct subjects of legislation, both of which are expressed in the title, is void in toto. (p. 254).

6. SAME—*Invalidity of Act Creating School District Embracing Two Separate and Distinct Subjects.*

Chapter 23 of the Acts of the Legislature, 1919, "Municipal Charters," being an act to amend and re-enact the charter of the city of Hinton, and creating and establishing the Independent School District of Hinton in the county of Summers, embraces two separate and distinct subjects of legislation, both of which are included in the title, and said act is therefore in violation of § 30 of Art. 6 of the Constitution and void. (p. 254).

Appeal from Circuit Court, Summers County.

Bill by R. J. Simms against Wm. H. Sawyers, Mayor, etc., of the City of Hinton, and others, to enjoin an election and the collection of taxes levied by the board of education. Decree for plaintiff, and defendants appeal.

*Affirmed.*

*Wm. H. Sawyers* and *Frank Lively,* for appellee.

*W. T. Ball, Thos. N. Read* and *R. F. Dunlap,* for appellants.

RITZ, JUDGE:

This litigation involves the constitutionality of chapter 23 of of the Acts of the Legislature of 1919, "Municipal Charters," being an Act to amend and re-enact the various acts providing a charter for the city of Hinton, and also to create and establish the Independent School District of Hinton. By the terms of this Act it extended the corporate limits of the city of Hinton as then existing so as to include considerable additional territory, and also provided a scheme of government for the city, and pre-

scribed the powers and duties of the respective officers thereof,
The first fourteen articles, consisting of 101 sections, are de-
voted to this phase.    Section 1 of Art. 1 creates the city of Hin-
ton out of certain territory described in section 2, and makes it
a city corporate and body politic by the name of the City of
Hinton.   Various provisions are made for the election of officers
of the city.   Their duties are carefully and definitely defined
and prescribed.   They are given power to levy taxes upon the
property within the city for public purposes.   Provision is made
for the election of the officers and their qualifications prescribed.
The method of procedure in the legislative bodies of the city is
likewise outlined.   In fact, these first fourteen articles attempt
to create a municipal corporation, and to fully and at large pre-
scribe and define its powers, duties and obligations.   Beginning
with article fifteen the balance of the Act creates the Inde-
pendent School District of Hinton in the county of Summers.
The territory included in this independent school district is co-
extensive with that embraced in the city of Hinton, as described
in the first part of the Act.   Article 15, § 102, creates in express
terms a public corporation to be known as the Independent Dis-
trict of Hinton in the county of Summers; provides for the
selection of a board of education; prescribes the duties
of this board of education; provides for levies to be made
by it upon the taxable property for the support of the free
school of the district; and fully and definitely outlines the pow-
ers and method of procedure of such board, as is usually done in
such independent school district acts.   The Act further pro-
vides that an election shall be held within thirty days from its
passage submitting to the qualified voters residing within the
territory described in the act the question of its adoption or re-
jection; and it further provides that in case the Act is adopted
at this election, another election shall be held on the 27th of
May, 1919, at which the electors of the entire district of Green-
brier, in which district the city of Hinton is, may express their
approval or disapproval of so much of the Act as creates the in-
dependent district.   In other words, under these provisions, if
the first election above referred to results favorably to the act,
the same is in force and effect so far as it provides for the
incorporation of the city of Hinton, but in order to make ef-

fective that part of it creating the Independent School District of Hinton another election is necessary, at which all of the voters of the district out of which this independent district is carved, have the right to vote; and in case the result of this election is in favor of establishing the independent district then that part of the Act goes into effect. At the time prescribed in the Act the first election above referred to was held and the result thereof was favorable to the adoption of the charter. At the time provided for the election upon the question of the establishment of the independent school district such election was held, and the result thereof was favorable to the establishment of the independent district. The Act provides that in case the same is ratified by the voters, the board of education of the independent district shall be appointed by the members of the board of affairs as for a vacancy until the next election. Members of the board were so appointed, and entered upon the performance of their duties, and have laid a levy upon all of the property within the independent district for the support of the free schools for the current year. The election for city officers is provided in the Act to be held on the first Tuesday in December, and at the time of filing the bill in this case preparations were being made for the holding of that election, and like preparations were being made by the city authorities for putting into effect the provisions of the new charter for the city of Hinton, and the provisions of the act creating the Independent District of Hinton. The plaintiff, a citizen and taxpayer residing outside of the old corporate limits of the city of Hinton, filed this bill alleging the foregoing facts, and seeking to enjoin the city authorities from putting into effect the provisions of said new charter and of said independent district act, and from collecting the taxes levied by the board of education under the provisions of said act, as well as from holding the election provided to be held by said act on the first Tuesday in December, upon the ground that the act was unconstitutional and void, being in violation of section 30 of article 6 of the Constitution which provides: "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so

expressed, and no law shall be revived, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act. And no act of the Legislature, except such as may be passed at the first session under this Constitution, shall take effect until the expiration of ninety days after its passage, unless the Legislature shall by a vote of two-thirds of the members elected to each House, taken by yeas and nays, otherwise direct." The defendants answer the bill, but raise no issue of fact, and the circuit court of Summers county upon a hearing of the cause held the act unconstitutional and void, and granted an injunction against the enforcement thereof, from which decree this appeal is prosecuted.

It is insisted that the decree of the circuit court should be reversed for the reason that it was without jurisdiction to entertain the bill of the plaintiff, it being a bill to enjoin an election. If this were the only purpose of the bill it may be that a court of equity would be without jurisdiction in the premises, but the purpose of this bill is much broader than that. It seeks not only to enjoin the election, but it seeks also to enjoin the officers of the city from putting into effect the new charter, and it seeks to enjoin the collection of the taxes levied by the board of education of the independent district. The jurisdiction of a court of equity to enjoin public officials from acting under a void act was sustained in the case of *Anderson* v. *Bowen,* 77 W. Va. 89, and the jurisdiction of a court of equity to enjoin the collection of a tax levied without authority of law was sustained in the case of *Turkey Knob Coal Co.* v. *Hallanan,* 84 W. Va. ——— 99 S. E. 49. So far as the matter of enjoining the election is concerned, the time has passed for the holding thereof, so that that question is not involved, but upon the two grounds above referred to jurisdiction in this case may be sustained.

The defendants, to sustain this act against the criticism that it embraces two objects, and that both of such objects are expressed in the title in violation of § 30 of Art. 6. insist that this constitutional provision inhibiting an act from embracing more than one object is merely directory, and to support this contention rely upon the case of *Shields and Preston* v. *Bennett,* 8 W. Va. 74. That case in the first point of the syllabus does hold that the provision of the Constitution above referred to is sim-

ply directory, and that the Legislature may include in one act as many different subjects as it desires, so long as all of the subjects are embraced in the title. In this case both of the subjects of legislation embraced by the act are covered by the title, and if it is held that the provision inhibiting the incluson of more than one subject in the same act is simply directory, then the act involved here may be allowed to stand. But is the case of *Shields and Preston* v. *Bennett* really authority for the proposition asserted? It is true it is laid down in a point in the syllabus, but a reading of the case discloses the fact that the question was not one for decision in that case. The Court held that the act involved there did not embrace two distinct subjects of legislation, but simply legislated upon two phases of the same subject, and we think this conclusion was entirely correct. The object of the act it was held was expressed in the title, and the matters of legislation which it was claimed were in excess of this were merely auxiliary, and were embraced within the subject of legislation. So far as that opinion goes beyond this holding it is not a decision of any point which arose in the case, and while we give to it great weight on account of the eminence of the jurists who participated in it, we must also bear in mind that being rendered upon a point not involved it was likely announced without that careful consideration and investigation which is generally given to the points necessary to be determined for a decision of the case.

In construing constitutional provisions it must be borne in mind that they stand upon a somewhat higher ground than statutes. The Constitution is the organic or fundamental law of the land, and unless there is some indication in it that some of its provisions are not intended to be mandatory it will be held that they must be followed, and that their prescriptions and requirements lay down the exact and exclusive method of doing the things permitted or required. *Capito* v. *Topping,* 65 W. Va. 587. There is nothing in our Constitution which indicates an intention that § 30 of Art. 6 should be treated differently from any other provision of the Constitution. The Constitutions of nearly all of the American states contain similar provisions. They were placed there for the purpose of preventing an evil which had become so prevalent as to be well-nigh subversive

of good government. The prohibition against embracing more than one subject in an act is for the purpose of preventing those interested in several different subjects from combining them into one act, and securing for the combined act the support of all the members of the legislature who are in favor of either of the propositions, when if each were submitted on its own merits none of them might command a majority. This had formerly been a favorite method of securing legislation by various private interests. The provision requiring the object to be clearly stated in the title of the act was to prevent members of the legislature, as well as the public, from being misled as to its purpose and effect; to give notice to all interested parties by a statement in the title of the subject of the legislation, and as to just what was sought to be accomplished. This was to overcome the evil of tacking on to acts various matters in no way connected with the subject referred to in the title, and thus securing their enactment as law without the knowledge of many members of the legislature, or of the public, that they were even under consideration. If we hold the provision of § 30, prohibiting more than one subject of legislation to be embraced in an act, to be simply directory, we nullify the means adopted by the people for overcoming what is commonly termed log rolling in legislation, for if the legislature may include in an act as many distinct subjects of legislation as it pleases, so long as each thereof are embraced in the title, those members interested in promoting objects none of which might command popular support, will not be prevented from combining them into one act, and thus securing for the combined act the votes of all the members interested in either of the objects sought to be attained. It may be said that the purpose of this provision was simply to bind the consciences of the members of the legislature, and not to affect legislation deliberately passed where the provision had not been complied with. We do not think there is ground for this argument. Without the adoption of this constitutional provision the consciences of legislators would be bound not to secure legislation by vicious methods, and if the provision is to be treated as appealing alone to the conscience of the legislator it would create no different condition than if it had not been adopted. Securing the adoption of legislation by what is popularly termed

log-rolling methods has always been reprobated and condemned even by those who at times indulge in the practice, and it needs no constitutional provision to impress upon the minds of those charged with the enactment of law the vice of such legislation, but the thing that was needed was something that would go further than that, something that would prevent the result of corrupt bargains brought about in this way from having any effect.

It does not appear, so far as we have been able to find, that the decision in 8 W. Va., above referred to, has ever been under consideration by this Court since that time. In the case of *Stewart* v. *Tennant,* 52 W. Va. 559, the constitutional provision now under consderation was discussed by Judge POFFENBARGER in the Court's opinion, and without referring to the former case in 8 W. Va. the Court treated this provision as mandatory and binding. It is true in that case this particular clause, that is, the one inhibiting two subjects of legislation to be included in one act, was no more directly involved than it was in the 8th W. Va. case, but the language used is applicable to it.

As we have before stated, provisions similar to this exist in the Constitutions of, perhaps, all of the American states, and they have frequently been construed. Where they have been called in question they have been held mandatory and binding, except in the state of Ohio, in which this particular provision is held to be directory. Formerly it was so held in the state of California, but the court's decisions were apparently so unsatsfactory to the people that the constitution was at once amended so as by its terms to make the provision mandatory, since which time the California court has held that strict compliance with it is necessary to the validity of an act. In Cooley on Constitutional Limitations, at page 213, the author fully approves the doctrine that such a provision is mandatory. In 25 R. C. L., Title, Statutes, § 84, it is said: "In a few jurisdictions the constitutional provision that a statute shall contain but one subject, which shall be expressed in the title, has been held merely directory to the members of the legislature, and, while operative on their consciences, relates only to bills during their progress through the legislative body, so that a failure to comply with it does not affect the validity of a law which is otherwise

duly enacted.  But the view that this provision is merely direc-
tory seems to conflict with the fundamental principle of consti-
tutional construction that whatever is prohibited by the con-
stitution, if in fact, done, is ineffectual.  And the vast prepon-
derance of authority holds such provisions to be mandatory and
that a failure to comply with them renders a statute void."  And
the authorities are there cited which fully support the text.

In 12 Cor. Jur. p. 740, it is likewise said that:  "By the
weight of authority, a constitutional provision that no bill
which embraces more than one subject shall become a law and
requiring that subject to be expressed in the title is mandatory.
But there are dicisions to the contrary."  In Black's Constitu-
tional Law, at page 329, it is said:  "In most of the states, the
constitution provides that no act of the legislature shall em-
brace more than one subject, and that such subject shall be
expressed in the title of the act.  This provision is mandatory,
and if it is disregarded, the whole statute, or any separable part
of it not embraced within the title, will be rejected as uncon-
stitutional."  Sutherland in his work on Statutory Construc-
tion, vol. 1, § 144, lays down the doctrine at page 250 as fol-
lows:  "If an act embraces two or more subjects and two or
more of the same are expressed in the title, the whole act is
void."  The question is discussed at some length in the case
of *Davis* v. *State,* 7 Md. 151, 61 Am. Dec. 331, and in a note to
this case in 61 Am. Dec., at page 340, the authorities then in
existence upon this question are cited and discussed.

A few representative cases in which this constitutional pro-
vision has been interpreted and held to be mandatory are:
*Central & Georgetown Road Co.* v. *The People,* 5 Col. 39;
*Pioneer Irrigation District* v. *Bradley,* 8 Idaho, 310; *Indiana
Central Ry. Co.* v. *Potts,* 7 Ind. 681; *Richard* v. *Stark County,*
8 N. D. 392; *Cannon* v. *Hemphill,* 7 Tex. 184; *Ex parte Liddell,*
93 Cal 633; *Crookston* v. *Board of County Commissioners,* 79
Minn. 283, 82 N. W. 586, 79 Am. St. Rep. 453; *Galpin* v. *City
of Chicago,* 269 Ill. 27, 109 N. E. 713, L. R. A. 1917 B 176;
*State* v. *Tibbetts,* 52 Neb. 228, 66 Am. St. Rep. 492; *Bell* v.
*District Court,* 28 Nev. 280, 81 Pac. 875, 113 Am. St. Rep. 854,
6 Ann. Cases, 982, 1 L. R. A. (N. S.) 843; *Garrigan* v. *Kennedy,*
19 S. D. 11, 8 Ann. Cases, 1125; *State* v. *Schlitz Brewing Co.,*

104 Tenn. 715, 78 Am. St. Rep. 941; *State* v. *Burrow,* 119 Tenn. 376, 14 Ann. Cases 809; *Acklen* v. *Thompson,* 112 Tenn. 43, 126 S. W. 730, 135 Am. St. Rep. 851; *Giddings* v. *City of Antonio,* 47 Tex. 548, 26 Am. Rep. 321; *State* v. *Superior Court,* 28 Wash. 317, 68 Pac. 957, 92 Am. St. Rep. 831. These representative authorities sufficiently indicate the holdings of the courts where a construction of this particular constitutional provision has been required, and the notes appended in the annotated series in which the cases are reported will enable the inquiring practitioner to fully inform himself as to the extent and nature of judicial decisions in this regard. It suffices to say that, so far as we have been able to determine by a rather full investigation, there is at this time only one state in the Union whose highest court holds a constitutional provision similar to the one involved here directory, and that is the State of Ohio. Such a holding violates every canon for the interpretation of constitutional provisions; it in effect nullifies this provision which had for its adoption the accomplishment of a very beneficent and wise purpose, and it is in conflict with the almost unanimous weight of judicial decisions in this country, as well as the unanimous judgment of the textwriters and commentators upon constitutional law. Under these circumstances we are not willing to hold this provision directory, even though the case above cited in 8 W. Va. lays down such a doctrine.

Does the act in question embrace two distinct subjects of legislation? It establishes two separate and distinct corporations in nowise connected with each other, except in that their territorial extent is the same. Each have separate powers; each operates independently of the other, having different objects and purposes for their accomplishment. It may be that if the legislature had attempted only to create the city of Hinton as a public corporation, and to cast upon that public corporation the obligation and duty of providing for the free schools within the territorial limits of the city, it could have accomplished that purpose in one act, although we do not decide that question. It may be extremely doubtful whether even this could be done under our system, which seeks to separate the conduct and control of the public schools from other public concerns. But this

act does not undertake to do that. It creates the city of Hinton and makes it a body politic, a public corporation, giving it certain well-defined powers and duties; it then creates the Board of Education of the Independent District of Hinton a separate and distinct corporation, conferring upon it certain powers, duties and obligations, and prescribing the method of their performance. The duties to be performed by each of these public corporations are separate and distinct. The official personnel thereof is distinct. Each lays its own levy for the accomplishment of the duties entrusted to it. We are constrained to hold that this act embraces two separate subjects of legislation, in violation of § 30 of Art. 6 of the Constitution. It must be borne in mind that every legislative provision need not be embraced in a separate act. Where the legislature undertakes to legislate upon a particular subject for the accomplishment of a certain object, it is competent to embrace within one act all regulations germane to the subject of legislation which may be appropriate to accomplish the object sought. It is only the joining in one act of two separate subjects of legislation which is inhibited, and not the joining of many separate provisions touching one subject, and having for their object the accomplishment of one purpose. The legislature may join in an act creating a municipal corporation many different legislative provisions, and so long as they are all germane to the subject, and are appropriate to the creation of such a municipal corporation, endowing it with full power for the accomplishment of the purpose of its creation, they will not be inimical to this provision of the Constitution, but the legislature cannot in one act create two separate and distinct public corporations, conferring upon each powers distinct and different from those conferred upon the other. *Payne* v. *School District,* 168 Pa. St. 386; Sutherland's Statutory Construction, § 143, p. 245; *Ritchie* v. *The People,* 155 Ill. 98.

Having come to the conclusion that the constitutional provision invoked here is mandatory, and that the act in question violates that provision, can any of the provisions of this act stand? It will be noticed that both of the subjects of lesislation covered by the act are included within its title. If the title only embraced one particular subject of legislation and the act was broader than the title, including an additional subject,

under the constitutional provision invoked, so much of the act as was not covered by the title would be void, and that part of it included within the title would be valid, but where the title includes both subjects of legislation embraced in the act, the whole act must fall for the very sufficient reason that it is improper for the Court to choose between the two. This is the doctrine laid down by Judge Cooley in his work on Constitutional Limitations, p. 211, where it is said: "But if the title to the act actually indicates, and the act itself actually embraces, two distinct objects, when the constitution says it shall embrace but one, the whole act must be treated as void, from the manifest impossibility in the court choosing between the two, and holding the act valid as to the one and void as to the other." And in Sutherland on Statutory Construction, § 144, p. 250, it is said: "If an act embraces two or more subjects and two or more of the same are expressed in the title, the whole act is void." See also Black on Constitutional Law, p. 329; *King* v. *Banks,* 61 Ga. 20; 36 Cyc. p. 102; *Ritchie* v. *The People,* 155 Ill. 98; *People v. Parks,* 58 Cal. 624; *Pioneer Irrigation District* v. *Bradley,* 8 Idaho, 310.

It is argued by the appellant that it is clear that no harm can come from upholding this act, for the reason that both of the subjects contained in it have been adopted by the people to be affected thereby. It may be that in this particular case no harm would be done by sustaining this act, and that to overthrow it will seriously disarrange the fiscal affairs, not only of the city of Hinton, but of the board of education, and may cause inconvenience to those charged with the administration of the law, but,

> "It must not be; there is no power in Venice
> Can alter a decree established:
> 'Twill be recorded for a precedent,
> And many an error, by the same example,
> Will rush into the State: it cannot be."

It follows from what we have said that the decree of the circuit court of Summers county will be affirmed.

*Affirmed.*